LOTTINGER, Judge.
This matter1 and the companion case of Olivier v. Fidelity & Casualty Company of New York, 91 So.2d 902, arise out of an automobile accident which occurred in the Parish of Iberia on January 29, 19S5. The petition of Louis Olivier alleges that about 11:30 P.M. on said date he was driving his automobile at a legal and reasonable rate of speed with his lights on in an easterly direction on the Loreau-ville-Lake Dauterive blacktop highway at which time a pickup truck owned by defendant Julius Chatagnier and driven at the time by the defendant Charles Chatag-nier in a westerly direction on said highway with his lights on, negligently and without warning suddenly swerved to the left of the center of the highway immediately in front of petitioner’s automobile and that said turn was made so suddenly that it was impossible for the petitioner to avoid colliding with the pickup truck. Damages are sought in the amount of $50.50 for emergency medical treatment, $240 for wages lost during a period of two months and $15,000 for pain suffered as a result of the accident. It is further alleged that the plaintiff’s 1936 Ford coupe automobile was rendered a total wreck and that same was worth $600. The other defendant is the Fidelity & Casualty Company of New York, the liability insurer of the defendant Julius Chatagnier.
The answer of the defendant is in the form of a general denial, the further allegation being made that the accident was the result solely of the plaintiff’s negligence and that the pickup truck owned by Julius Chatagnier and in the custody of Charles Chatagnier with the former’s permission was, at the time of the accident, parked on the south side of the Loreauville-Lake Dauterive blacktop road, the front of the truck facing in a westerly direction with the headlights burning. It is averred that the truck was parked as far off the road as was possible, the right side thereof extending two feet onto the travelled portion of the road. It is further set forth that the plaintiff at the time was travelling at a speed of about 40 miles per hour and that, notwithstanding the foregoing, he made no attempt to avoid the pickup truck and collided with same; that he made no attempt to reduce his speed or to swerve or to do ■anything else to avoid tire accident. The further allegation is made that he was driving while intoxicated and that his state of intoxication directly contributed to the accident. Assuming the position of plaintiffs in reconvention, Julius Chatagnier reconvened for the sum of $460, being the amount claimed as damages which resulted to his pickup truck, and Charles Chatagnier, alleging that he sustained a bruised chest, a broken nose, and lacerations of the right hand, right eye and left leg and that he was unable to work for a period of two months, reconvened for the sum of $400 for loss of wages, $40 for medical expenses and $5,000 for pain and suffering.
*899 Following trial on the merits ill the court below the demands of the plaintiffs were dismissed. Julius Chatagnier was awarded the sum of $464 being the amount of repair to his truck and the demands of Charles Chatagnier were rejected. The matter is now before us on an appeal taken by the plaintiff. Neither of the defendants has appealed or answered the appeal.
The testimony of Louis Olivier, the plaintiff, is substantially as follows:
He owned the 1936 model Ford in the month of January, 1955 and on the night of January 29th he was on the highway going toward Lake Dauterive. About 4 acres after he crossed “the track” he “seen a car was coming and when he got about 40 or 50 feet from me, he just ducked right into me.” It was a Saturday night, the weather was clear and the road was a blacktop road. He and his daughter, who was with him, were both injured and were taken to the Loreauville Hospital where he stayed for a period of four days. The accident happened so quickly that lié could not get out of the way. He tried, “but it happened so quick. He just run into me like that and hit me. It was about thirty, forty or fifty feet when he turned in; he left his side and come on mine.” He stated that he had no chance whatsoever of getting out of the way and that he never had his automobile repaired because “everything was broken up” and that it “was no more good.” He said that the truck was damaged more on the left side.
On cross examination he stated that at the time of the accident there were three people in the automobile and they were going to a club at Marsha’s. Previous to the accident, he had been at George Andrus’ saloon where he had had two drinks, one of whiskey and one of beer. He stated that he had been at that place from about 5 o’clock until about 11 or 11:30 P.M. He said that at the place of the accident the shoulder is wide, about 6 or 7 feet, with plenty of room to park a vehicle on the shoulder on either side. He stated further that there were two big ditches, one on either side of the road. His speed was from 25 to 30 miles per hour at the time of the accident and he did not know how fast the other vehicle was going. It cut sharply in front of him at a distance of from 45 to 50 feet. He had no time to put on his brakes. The other occupant of the car was a man from Texas whom he had picked up at Loreauville and who he was taking to the club with him. He denied that the pickup truck was parked on the side of the road. He stated that after the accident the truck was backed up about 20 feet, whereas his car stayed right in the same place. The truck lights were on but he did not know how many people were inside it.
The third party, on redirect examination, he identified as the boy from Texas whom he had telephoned and tried to get to come to testify but who did not show up.
The testimony of George Andrus is as follows:
He is a saloon operator in Loreauville, knows the plaintiff and his daughter, Mary Dell, and saw them in his saloon quite often. The plaintiff, Louis Olivier, was not a hard drinker. When questions as to whether he had ever seen him drunk in his place were asked, he answered, “Well, not what you call drunk, I have seen him drink but when he gets to a certain extent, he don’t drink anymore because I notice they offer him a drink and he has enough. They either go home or he sets down there at the bench.” On cross examination he said he had never seen him when he had even “a little too much.” He saw him the night of the accident and did not think that he was intoxicated.
Madison Viltz testified that he knew the plaintiff and that he was proceeding in the rear of him when the wreck occurred. The accident happened, he said, as Olivier was going one way and the truck, which was going in the other direction, came across onto Olivier’s side of the road. At this time he was about 100 feet or better behind *900 Olivier and driving at about 25 miles per hour. The two vehicles were almost meeting each other when the truck crossed over. He stated positively that he saw that, and after the accident the car was in the center and the truck was knocked “off the pave” about 20 feet away. He stated that the truck had not parked, because he saw the truck coming; that it was coming on its side of the road and suddenly turned into Olivier’s side of the road. The weather, he said, was cold, very cold, and he was riding together with one June Ransom. On cross examination he said that he did not know how fast the truck was moving but that he did not think it would have been faster than he was. He did not know if there was enough room on the shoulders for the truck to park.
June Ransom testified as follows:
That he was riding in another car right in the back of Olivier, that Viltz told him to look and when he raised his head the “hit had done made.” He picked up Mary Dell and took her to the hospital. At that time the truck was in the ditch about 25 feet from the automobile.
Robert Vaughn testified as follows:
That he is the City Marshal in Loreau-ville; that he had known Louis Olivier all of his life and that he saw Olivier in the evening and the early part of the night. He stated that he had never seen him drunk, that he had seen him drink a little but had never seen him in a drunk condition. He stated that he drinks very little. He went to the scene of the accident and stated that, at that time, the truck was practically on the other side of the ditch and the car was on the road, the two vehicles being about 20 feet apart. According to this witness, at this particular area, the Lake Dauterive Road has very small shoulders, measuring about only 3 feet. On cross examination he repeated that the shoulders were about 3 feet in width and that one could not park all the way off the blacktop without getting in the ditch.
Mary Dell Olivier testified as follows:
That on the night of the accident she was riding with her father headed towards Lake Dauterive. As he crossed the track she stated, “I seen a light of an automobile in a distance from the track, the automobile was headed toward Loreauviile, he turned into my daddy’s road.” It happened so fast her father could do nothing about it. Her father was not drunk at the time.
Charles Chatagnier testified as follows:
That he was employed as a roustabout in an oil field and that prior to the accident he was going to work for the Bayou Welding Works and about 11 o’clock on the night of the accident went by to pick up one Clarence Peltier. One Louis Prince, who worked with him, was with him at the time and they were in a 1951 Ford Pickup truck which belonged to the witness’ brother, Julius Chatagnier, who allowed him to use same to go to work. He stopped on the left hand side of the highway, parking as much as he could off the highway, with his lights still on and his motor running. He stated that he left the motor on because it was a cold night and he had the heater on. He blew for Clarence Peltier and waited for him. His wife came out and about fifteen minutes later, the accident occurred. At the time of the accident he was parked in front of Pel-tier’s house. There was no driveway in which he could have turned and he did not see the car when it ran into the truck. He stated that after parking on the side of the road, there was still 19 feet left on the travelled portion, and that he had measured it. The road at the place of the accident was straight and there was nothing to obstruct the view for a considerable distance on either side. After the accident the car was about five feet from where the truck had been parked and the truck was about 30 feet or 40 feet from its original place after the accident. It went off the highway completely. He stated that he smelled alcohol on Olivier and thought from the way he was talking that he had had a few drinks. On cross examination, he stated that the *901 shoulders of the. place in question were about 4 feet in width and that one could not park on the shoulder completely, part of the car having to remain on the highway in front of Peltier’s home. He did not see the car of Olivier coming towards him. His own lights were on and he stated that he was talking to Prince and didn’t see him coming. He was behind the steering wheel himself and he said that Prince did not tell him that he saw the car coming. The right part of his truck was damaged the most.
Sterling Vice testified as follows:
At the time of the accident he was employed by the State Police and investigated the accident. The pickup truck was some 50 feet away from the Ford Coupe and 50 feet also from the point of impact which he placed by debris left on the road. He found tire prints, one set of which were on the road and the other set of which were on the shoulder going straight back from where he estimated that the truck had been parked. He stated that from the physical facts, it was his opinion that the truck was not moving at the time of the collision. When he found the truck the left front light and the taillights were still burning, the right front light was broken and was out. He stated that Olivier smelled of liquor.
Louis Prince testified as follows:
That he was working for the Bayou Welding people as a roustabout on the date of the accident and that at that time he was preparing to go to work. He was with Charles Chatagnier and they stopped by to pick up Clarence Peltier, parking on the left hand side of the road partly off of the road as far as Chatagnier could get. He stated that they had to wait 10 or 15 minutes before Peltier came out, at which time they had the headlights on and the motor running. They kept the motor running because it was cold. He didn’t remember whether or not “Charlie” blew his horn. About 10 or 15 minutes elapsed between the time they stopped and the time the accident took place. He saw the car just before it ran into them and said the driver made no attempt to swerve to get out of the way. The car’s lights were on and he did not have time to say anything to “Charlie” about the other car coming. The collision knocked the truck back at least 40 or 45 feet from where they were parked into the ditch. He did not recall where the car was. On cross examination he stated that Peltier had not reached the truck at the time of the accident, but was outside of his house coming towards the truck. He did not see another car following Olivier’s car. He repeated that they had their lights on and that the truck’s heater was on at the time of the accident. The right front end of the truck was damaged, but he did not examine the automobile after the accident.
Clarence Peltier testified as follows:
Charles Chatagnier blew the horn at which time he was in his house sleeping. His wife told him that Chatagnier was there and he “went to get dressed.” After he got dressed, he went outside and when he was going to the road, he saw the truck going into the ditch. He did not see the two vehicles collide. He said it took him about 10 or 15 minutes to get dressed.
Mrs. Clarence Peltier testified as follows:
She was sleeping and when she heard the horn of the truck, she looked through the door and saw the truck. She went and called her husband who was still sleeping. The lights of the truck were on at that time. She fixed her husband’s lunch and about 10 or 15 minutes elapsed from the time the horn was blown until the accident occurred. She heard the impact but did not see the accident. The truck ended up in the ditch but she did not know how many feet back from where it had been. The car was in the middle of the road.
The Lower Court, after thoroughly reviewing and analyzing the testimony of the various witnesses, stated:
“It is the conclusion of the Court that the preponderance of the evidence shows that the proximate cause of this collision was the negligence of Louis Olivier in driving his car into the parked truck. The tire prints, the debris, the position of the car and that of the *902 truck after the impact and the place of damage to each vehicle show that the collision could not have taken place when Chatagnier made a sharp left turn, but did take place after the truck had parked, as testified to by Chatag-nier, Louis Prince, Mr. and Mrs. Clarence Peltier and Sterling Vice.
“The demands of the plaintiffs are dismissed.
“Julius Chatagnier prayed for damages in the sum of $460.00. He testified that the repairs amounted to $464.-00. There was no objection and Judgment is rendered in his favor against Louis Olivier for that amount.”
The testimony of the witnesses for the respective parties is in hopeless conflict. The trial judge resolved the discrepancy in favor of the defendants and from the record as made up we are unable to find where he committed manifest error in so doing.
Finding no manifest error in the judgment appealed from, the same is hereby affirmed.
Judgment affirmed.